William J. Edelman (SBN: 285177)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
227 W. Monroe Stree, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
wedelman@milberg.com

Tyler J. Bean*
Sonjay C. Singh*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: tbean@sirillp.com
E: ssingh@sirillp.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| **HEATHER GRABOW**, on behalf of her minor child, **M.G.**, and all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>**DISNEY WORLDWIDE SERVICES, INC.**, a corporation, and **DISNEY ENTERTAINMENT OPERATIONS, LLC**, a limited liability company,<br><br>       Defendants. | Case No. 2:25-cv-08674<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1

Plaintiff Heather Grabow, on behalf of her minor child, M.G. (the "**Plaintiff's Child**" or "Minor Plaintiff") and all similarly situated persons, alleges the following against Defendants Disney Worldwide Services, Inc. And Disney Entertainment Operations, LLC (collectively, "**Disney**" or "**Defendants**"), based upon personal knowledge with respect to herself and her child, and on information and belief derived from, among other things, investigation by Plaintiff's counsel and review of public documents as to all other matters:

## I.    INTRODUCTION

1.    Protecting children's privacy is a major concern for parents in this interconnected age. In a recent survey, more than 85% of parents believe that access to technology is important for their children's future, but more than three quarters of parents are concerned about protecting their family's security, and 73% were concerned about their children's personal data being collected by third parties without their consent.[1]

2.    These concerns are well founded. "[U]p until age 18, young people are highly vulnerable to advertising."[2] In the words of one researcher:

> There's a lot of neuroscience that explains why adolescents and children are so vulnerable [to advertising]…they're much more attuned to rewards, much less attentive to consequences and risks, much more tolerant of ambiguity, much more sensitive to social cues and much more impulsive, so they don't have a lot of cognitive control…***This is an advertiser's dream***.[3]

---

[1] *POLLING MEMO: PARENTS' VIEWS ON CHILDREN'S DIGITAL PRIVACY AND SAFETY*, TRUSTED FUTURE, https://trustedfuture.org/childrens-digital-privacy-and-safety/#:~:text=87%25%20of%20parents%20believe%20technology,the%20lives%20of%20their%20parents (last visited Feb. 25, 2025).

[2] *Exposing the Dangers of Targeting Children as Consumers*, UC IRVINE PAUL MERAGE SCHOOL OF BUSINESS (July 3, 2024), https://merage.uci.edu/news/2024/07/Exposing-the-Dangers-of-Targeting-Children-as-Consumers.html (last visited Feb. 2, 2025).

[3] *Id.*

CLASS ACTION COMPLAINT

3.     Given these concerns, one would hope that businesses catering to children would be especially careful to take the steps necessary to avoid the sharing of information about those children with advertisers, or at the very least, to be upfront with parents about the sharing of information so parents can decide whether the website is appropriate.  Unfortunately, like here, that is sometimes not the case.

4.     Disney is a globally recognized media conglomerate that produces and distributes highly popular child-directed content, including through its official channels on YouTube, a video-sharing platform owned by Google, LLC.

5.     Despite creating and uploading animated videos, cartoons, movie clips, and other content clearly directed at children under 13, Disney has, *since 2020*, failed to designate its videos as "made for kids" on YouTube's platform, thereby enabling the collection of personal information from children, including both persistent identifiers such as cookies and device IDs and sensitive data like identity and location information (the "**Private Children's Data**"), without providing notice to parents or obtaining verifiable parental consent.

6.     As a result, Disney enables YouTube's algorithm to deliver targeted advertising to children watching Disney's content, generating substantial advertising revenue for Disney and its affiliates.

7.     Plaintiff's Child and Class Members viewed Disney's YouTube channels, and as a result had their data improperly tracked and collected.

8.     Moreover, Disney's failure to properly designate its videos (and the resulting tracking of its Website users) violated numerous state and federal laws, including the Children's Online Privacy Protection Act of 1998 ("**COPPA**"), enacted to protect children, like Plaintiff's Child, from being surveilled while using the Internet.

9.     As a result of Disney's conduct, Plaintiff, Plaintiff's Child, and Class Members have suffered numerous injuries, including: (i) invasion of privacy; (ii) lack of trust in communicating with online service providers; (iii) emotional distress and

3

heightened concerns related to the release of their data (or children's data) to third parties; (iv) loss of benefit of the bargain; (v) diminution of value of the Private Children's Data; and (vi) statutory damages.

10.    Therefore, Plaintiff seeks, on behalf of Plaintiff's Child, and a class of similarly situated persons, to remedy these harms and asserts claims for Invasion of Privacy, Negligence, and Unjust Enrichment against Defendants.

## II.    PARTIES

### *Plaintiff Heather Grabow and Minor Plaintiff M.G.*

11.    Plaintiff Grabow and Minor Plaintiff M.G. are citizens of the State of California, residing in Humboldt County. Plaintiff Grabow brings this action on behalf of Minor Plaintiff M.G., and on behalf of all others similarly situated.

12.    On multiple occasions between 2022 and 2025, Minor Plaintiff M.G. accessed Disney's YouTube content using personal electronic devices.

13.    Plaintiff Grabow never authorized Disney to collect or disclose any aspect of Minor Plaintiff M.G.'s Private Children's Data.

14.    On every occasion that she accessed Disney's YouTube content, Minor Plaintiff M.G. was under the age of thirteen.

### *Defendants*

15.    Defendant Disney Worldwide Services, Inc. ("Disney Worldwide") is a Florida corporation with its principal place of business at 1375 Buena Vista Drive, Lake Buena Vista, Florida 32830. Disney Worldwide is a wholly owned subsidiary of the Walt Disney Company and serves as a central business and administrative services provider for Disney's various media and entertainment subsidiaries.

16.    Defendant Disney Entertainment Operations, LLC ("Disney Entertainment") is a Florida limited liability company, with its principal place of business at 500 Buena Vista Street, Burbank, California 91521. Disney Entertainment is primarily responsible for the creation, distribution, and monetization of Disney's

entertainment content, including video programming made available on platforms such as YouTube.

17. Disney Worldwide and Disney Entertainment are agents and instrumentalities of the Walt Disney Company and operate under its direction and control.

## III.    JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("**CAFA**"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members and minimal diversity exists because Plaintiff and many putative class members are citizens of a different state than Defendants. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

19. This Court has personal jurisdiction because Disney Entertainment operates and maintains its principal place of business in this District. Further, Defendants are authorized to, and regularly conduct business in, this District and make decisions regarding corporate governance and management of their web properties in this District, including decisions regarding the privacy of the Private Children's Data at-issue.

20. Venue is proper in this District under 28 U.S.C. § 1391(a)- (d) because Defendants caused harm to Class Members residing in this District, including to Minor Plaintiff M.G.

## IV.    FACTUAL ALLEGATIONS

### A. THE CHILDREN'S ONLINE PRIVACY PROTECTION ACT OF 1998

21. Congress passed COPPA in 1998 to codify the societal expectations of privacy with regards to minor children's usage of the Internet. COPPA is intended to "maintain the security of personally identifiable information of children collected

online" and to "protect children's privacy by limiting the collection of personal information from children without parental consent."[4]

22.    COPPA "prohibits unfair … acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the Internet." 16 C.F.R. § 312.1. Moreover, COPPA specifically prohibits "an operator of a website or online service…[from] collect[ing] personal information from a child in a manner that violates the regulations prescribed [by the Federal Trade Commission ("**FTC**")]" where the website or online service is "directed to children" or the website operator "has actual knowledge that it is collecting personal information from a child[.]" 15 U.S.C. § 6502.

23.    When passed in 1998, COPPA defined "personal information" as meaning:

> individually identifiable information about an individual collected online, including--(A) a first and last name; (B) a home or other physical address including street name and name of a city or town; (C) an e-mail address; (D) a telephone number; (E) a Social Security number; (F) any other identifier that the Commission determines permits the physical or online contacting of a specific individual; or (G) information concerning the child or the parents of that child that the website collects online from the child and combines with an identifier described in this paragraph.

15 USCS § 6501 (1998).

24.    Then, in 2013, COPPA was enhanced, and its definition of "personal information" was widened to explicitly include "persistent identifier[s] that can be used to recognize a user over time and across different Web sites or online services" including "customer number[s] held in a cookie," "Internet Protocol (IP) address[es]," "processor or device serial number[s]," and "unique device identifier[s.]" 16 C.F.R. § 312.2.

---

[4] *Dissenting Statement of FTC Commissioner Rebecca Kelly Slaughter In the Matter of Google LLC and YouTube, LLC*, FEDERAL TRADE COMMISSION (Sep. 9, 2019), *available online at*: https://www.ftc.gov/system/files/documents/public_statements/1542971/slaughter_google_youtube_statement.pdf.

CLASS ACTION COMPLAINT

25.    To comply with COPPA, website operators collecting information from children must:

> provide notice on the website of what information is collected from children by the operator, how the operator uses such information, and the operator's disclosure practices for such information; and … obtain verifiable parental consent for the collection, use, or disclosure of personal information from children[.]

15 U.S.C. § 6502(b)(1)(A).

26.    In order to determine whether a website or online service is "directed to children" the FTC considers the website's:

> subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children.

16 CFR § 312.2.

27.    Defendants' video content is obviously "directed to children" under the meaning of COPPA, as it involves animated characters and content under the family-friendly Disney brand.

28.    Accordingly, Disney's collection and disclosure of personally identifiable information without obtaining parental permission from minors, like Plaintiff's Child, constitutes a violation of COPPA.

**B. DEFENDANTS CAUSED MINOR PLAINTIFF'S AND CLASS MEMBERS' DATA TO BE TRACKED**

**1. Defendants failed to mark their child-directed YouTube content appropriately.**

29.    Defendants operate an online service that offers streaming content in the form of videos that it uploads on the YouTube platform. The YouTube platform is a video-sharing platform on which, among other things, users can view videos or upload video content to share. According to the FTC, during the relevant time period of 2020

CLASS ACTION COMPLAINT

through the present, Disney has operated and uploaded videos to more than 1,250 YouTube channels through numerous subsidiaries.

30.    Disney's YouTube videos are extremely popular. According to the FTC, videos on just three dozen of Disney's channels resulted in tens of millions of hours watched worldwide and hundreds of millions of views in the United States in just three months of 2019.

31.    In 2019, the FTC brought an enforcement action against YouTube and Google alleging that they knowingly collected personal information about minors under the age of 13 in violation of COPPA. The FTC alleged that YouTube knowingly collected personal information about children under the age of 13—including personal information used for behavioral advertising—without providing notice to parents or obtaining verifiable parental consent, as required by law. The complaint specifically cited YouTube's and its content creators' practice of hosting and profiting from content clearly directed at children, while falsely claiming it was a general audience platform.

32.    As part of the FTC settlement against YouTube, YouTube agreed to pay a then-record $170 million fine and implement systemic changes to its platform, including requiring content creators (those who produce content to upload to the platform), such as Disney, to designate whether the videos being uploaded are "made for kids" ("MFK") or "not made for kids" ("NMFK").

33.    As the FTC explained in its Complaint against Disney, when a video is marked "Not Made for Kids":

> certain functionality is disabled by YouTube – with respect to that video – for example, comments, "autoplay on home," and targeted advertising are disabled. Playback in the Miniplayer, which allows a video to continue to play on a small screen as a user browses YouTube, is also disabled, as is the ability for a user to save a video to a playlist or to watch later. These features are disabled, in part, to prevent the collection of personal information from children that would require operators to provide notice and obtain verifiable parental consent under

8

CLASS ACTION COMPLAINT

the COPPA Rule. In addition to these features being disabled, the designation of a video also affects autoplay—when a video is marked as MFK it will exclusively autoplay to other videos marked as MFK and not play videos designated as NMFK…

As a result of the settings and related functionality, when videos that are child-directed are not designated as MFK, advertising is targeted to children using persistent identifiers. Other features YouTube disables for MFK videos are also available to children, including comments on the video, "autoplay on home," notifications, playback in the Miniplayer, and the ability to save a video to a playlist or to watch later. In addition, the videos that are child directed and improperly designated as NMFK can autoplay other videos that are designated as NMFK.

34.     Disney failed to mark its child-directed YouTube content appropriately under this policy. Across numerous YouTube channels—including the Pixar channel, the Disney Plus channel, the Walt Disney Studios channel, the Disney Animation Studios channel, the Disney Movies channel, the Disney on Ice channel, the Disney channel, the Oh My Disney channel, the Disney on Broadway channel, and the Disney D23 channel—Disney uploaded child-directed content, including animated content, sing-a-long music videos, content featuring popular children's characters such as Mickey Mouse and characters from Disney's many animated movies, *without designating the videos as MFK*.

35.     Disney was warned that not complying with the Made for Kids framework could result in violations of law. For example, YouTube warns in its *Help Center* that:

we require you to tell us whether or not your videos are made for kids according to an agreement with the US Federal Trade Commission (FTC) and to help you comply with the Children's Online Privacy Protection Act (COPPA) and/or other applicable laws. Failure to set your content appropriately may result in consequences on YouTube or have legal consequences under COPPA and other laws.[5]

---

[5] *Help Center*, YOUTUBE, https://support.google.com/youtube/answer/9528076?hl=en (last accessed Sep. 11, 2025).

CLASS ACTION COMPLAINT

36.    Even still, Defendants failed to take action.

**2.  Defendants profited from their failure to mark child-directed content as MFK.**

37.    At all relevant times, Disney actively participated in YouTube's partner program, which is a monetization agreement where content creators, like Disney, receive a significant share of advertising revenue generated from videos of their content on YouTube, including pre-roll, mid-roll, banner, and targeted display advertisements.

38.    The YouTube partner program allows Disney to generate revenue on its videos by receiving a portion of YouTube's advertising revenue generated from advertisements that YouTube places with Disney videos. Indeed, upon information and belief, Disney is widely regarded as a preferred content partner—a designation given to top-tier advertisers and premium content producers. This status offers additional monetization benefits and brand safety assurances.

39.    YouTube effectively enables Disney to benefit from and indirectly access personal data—especially behavioral data—collected from viewers, including children. Both Disney and YouTube prefer behavioral advertising because it is widely regarded as more effective than contextual targeting. Thus, advertisers pay YouTube more to run behavioral advertising, and YouTube in turn pays Disney more for allowing YouTube to run behavioral advertising on its channels than YouTube otherwise would have paid Disney for only allowing contextual advertising. In other words, both YouTube and Disney have a strong financial incentive to use behavioral advertising.

40.    Moreover, in addition to the advertising that YouTube places on Disney videos, as discussed above, Disney itself places advertising in its videos on YouTube.

41.    As with the advertising placed by YouTube on Disney's behalf, Disney enabled targeted advertising campaigns to run on videos that were designated as NMFK, but in fact were directed to children, on both MFK and NMFK channels.

CLASS ACTION COMPLAINT

42.    In particular, as noted above, the designation of a video as NMFK on an MFK channel deviated from Disney's policy that all videos on a channel designated as MFK must also be marked as MFK. The targeted advertising campaigns were enabled on videos that were designated as NMFK that were uploaded to channels that Disney had designated as MFK including the Disney channel, the Disney Descendants channel, the Disney Family channel, the Disney Games channel, the Disney Junior channel, the Disney Music channel, the Disney XD channel, the Mickey Mouse channel, the Pixar Cars channel, the Radio Disney channel, and the Nat Geo Kids channel.

### 3.    Children Are Specifically Targeted by Online Advertisers

43.    Children are not exempt from this mass surveillance machine. As reported by Vox:

> [T]oday's kids are the most at risk because they have the largest digital footprint in history. Between the Nest cameras watching kids at home, kids' games that target them with ads, and purchase preferences on Amazon and Google, their data is being harvested at an unprecedented rate.[6]

44.    Why are advertisers willing to potentially violate COPPA to collect data from minors? The answer is simple: children are particularly susceptible to advertising.

45.    Indeed, research conducted by the American Academy of Pediatrics has found that "[c]hildren are uniquely vulnerable to the persuasive effects of advertising because of immature critical thinking skills and impulse inhibition."[7] As one expert explains:

> There's a lot of neuroscience that explains why adolescents and children are so vulnerable [to advertising]…they're much more attuned to rewards, much less attentive to consequences and risks, much more tolerant of

---

[6] Chavie Lieber, *Big tech has your kid's data — and you probably gave it to them* VOX (Dec. 5, 2018), https://www.vox.com/the-goods/2018/12/5/18128066/children-data-surveillance-amazon-facebook-google-apple (last visited Feb. 2, 2025).

[7] Jenny Radesky, Yolanda Linda Reid Chassiakos, Nusheen Ameenuddin & Dipesh Navsaria, *Digital Advertising to Children*, 146 PEDIATRICS 1681 (Jul. 2020), *available online at:* https://pubmed.ncbi.nlm.nih.gov/32571990/.

CLASS ACTION COMPLAINT

ambiguity, much more sensitive to social cues and much more impulsive, so they don't have a lot of cognitive control...***This is an advertiser's dream***.[8]

46.    In pursuit of this dream, advertisers spend more and more on advertising directed to children every year. In 2023, United States kids' advertising expenditures totaled nearly ***$3-billion*** – by 2031, that number is projected to reach ***$21-billion***.[9]

47.    As a result, the National Financial Educators Council notes that:

By the time they turn 21, young people will have been exposed to over one million advertisements – many of which are highly-sophisticated ads that encourage them to make purchases based on wants rather than needs.[10]

48.    But, if the tactics used by online advertisers are cause for alarm, the products pushed onto children through those tactics are worthy of outright panic.

49.    Researchers have found that exposure to "newer forms of digital marketing" driven by "data collection" and "personalized behavioral marketing driven by machine learning," is "associated with unhealthy behaviors, such as intake of high-calorie, low-nutrient food and beverages; use of tobacco products and electronic cigarettes; use of alcohol and marijuana; and indoor tanning."[11]

50.    The resulting harm to our children is staggering. To take one of many examples, in 1971, cigarettes were banned on television and radio when multiple studies revealed that "attention and receptivity to cigarette advertising is correlated with both current and future use [by minors]."[12] Now, over fifty years later, nicotine peddlers have adapted their product and their method by pushing e-cigarettes through data-driven "social media influencers, hashtags, music videos, and other informal social media

---

[8] *Exposing the Dangers of Targeting Children as Consumers*, UC IRVINE PAUL MERAGE SCHOOL OF BUSINESS (July 3, 2024), https://merage.uci.edu/news/2024/07/Exposing-the-Dangers-of-Targeting-Children-as-Consumers.html (last visited Feb. 2, 2025).
[9] *Stop Advertising to Kids – Stop Predatory Advertising*, NATIONAL FINANCIAL EDUCATORS COUNCIL, https://www.financialeducatorscouncil.org/stop-advertising-to-kids/ (last visited Feb. 25, 2025).
[10] *Id.*
[11] Radesky, *supra*.
[12] *Id.*

CLASS ACTION COMPLAINT

presence" advertising.[13] As a result, the "United States is seeing an explosive rise of adolescents' vaping and the renormalization of smoking" driven by a drastic increase in e-cigarette use among high schoolers."[14]

51.    Online child-targeted advertising is a big problem – but without the data collected by companies like Defendant, it would not be nearly as effective.

## C. PLAINTIFF'S, PLAINTIFF'S CHILD, AND CLASS MEMBERS' REASONABLE EXPECTATION OF PRIVACY

52.    At all times when Plaintiff's Child and Class Members watched Disney's video content, Plaintiff, Plaintiff's Child, and Class Members had a reasonable expectation that their information would remain confidential and that Disney would not collect or share the Private Children's Data with third parties for a commercial purpose, unrelated to providing them with video content.

53.    Privacy polls and studies show that the overwhelming majority of Americans consider obtaining an individual's affirmative informed consent before a company collects and shares that individual's data to be one of the most important privacy rights.

54.    For example, a recent Consumer Reports study shows that 92-percent of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing consumer data, and the same percentage believe those companies and websites should be required to provide consumers with a complete list of the data that is collected about them.[15]

---

[13] *Id.*

[14] Kristen Jones & Gary A Salzman, *The Vaping Epidemic in Adolescents*, 117 MO. MED. 56-58 (Jan. 2020), *available online at*: https://pmc.ncbi.nlm.nih.gov/articles/PMC7023954/.

[15] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety-a3980496907 (last visited Feb. 2, 2025).

55.     Moreover, Americans are particularly sensitive about protecting the privacy of children. In a survey conducted jointly by the Center for Digital Democracy and Common Sense Media, 90-percent of parents disagreed with the statement: "It is okay for advertisers to track and keep a record of a child's behavior online if they give the child free content[,]" and 93-percent of parents agreed that "a federal law that says that online sites and companies need to ask parents' permission before they collect personal information from children under age 13" is a "good idea."[16] In light of these results, it is perhaps unsurprising that 80-percent of parents of children 13-years-old or younger report worrying about their child's privacy when using online apps.[17]

56.     Personal data privacy and obtaining consent to share or collect Private Children's Data are material to Plaintiff and Class Members.

57.     Moreover, Plaintiff's Child's and Class Members' Private Children's Data had value, and Disney's failure to take the necessary steps to protect that Private Children's Data harmed Plaintiff's Child and the Class.

58.     Conservative estimates suggest that in 2018, Internet companies earned $202 per American user from mining and selling data. That figure is only due to keep increasing; estimates for 2022 are as high as $434 per user, for a total of more than $200 billion industry wide.

59.     Several companies have products through which they pay consumers for a license to track certain information. Google, Nielsen, UpVoice, HoneyGain, and SavvyConnect are all companies that pay for browsing history information.

---

[16] *Survey on Children and Online Privacy*, CENTER FOR DIGITAL DEMOCRACY & COMMON SENSE MEDIA (2012), *available online at*: https://democraticmedia.org/assets/resources/COPPA-Executive-Summary-and-Findings-1635879421.pdf.

[17] *Pixalate's Harris Poll Survey Recap: Children's Privacy in Mobile Apps*, PIXALATE (Mar. 1, 2022), https://www.pixalate.com/blog/childrens-online-privacy-harris-poll-recap (last visited Feb. 2, 2025).

CLASS ACTION COMPLAINT

60.    The failure by Defendants to properly designate their videos as MFK resulted in the unlawful collection of Plaintiff's Child's and Class Members' Private Children's Data and the diminished value thereof.

## V.    CLASS ALLEGATIONS

61.    This action is brought by the named Plaintiff, on behalf of the Plaintiff's Child, and a proposed Class of all other persons similarly situated under Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4).

62.    The Nationwide Class that Plaintiff seeks to represent is defined as follows:

**The Nationwide Class**
All persons under the age of 13 who watched child-directed YouTube videos produced by Disney that were improperly designated as Not Made for Kids.

63.    In addition to the claims asserted on behalf of the Nationwide Class, Plaintiff asserts claims on behalf of a separate California Subclass, which is defined as follows:

**California Subclass**
All persons under the age of 13 in the State of California who watched child-directed YouTube videos produced by Disney that were improperly designated as Not Made for Kids.

64.    Excluded from the proposed Class are any claims for personal injury, wrongful death, or other property damage sustained by the Class; and any Judge conducting any proceeding in this action and members of their immediate families.

65.    Plaintiff reserves the right to amend the definitions of the Class or add subclasses if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

66.    **Numerosity.** The Class is so numerous that the individual joinder of all members is impracticable. Upon information and belief, there are at least 1,000,000 individuals that have been impacted by Disney's actions. Moreover, the exact number of

those impacted is generally ascertainable by appropriate discovery and is in the exclusive control of Defendant.

67.    **Commonality.** Common questions of law or fact arising from Disney's conduct exist as to all members of the Class, which predominate over any questions affecting only individual Class Members. These common questions include, but are not limited to, the following:

a)    Whether and to what extent Disney had a duty to protect the Private Children's Data of Plaintiff's Child and Class Members;

b)    Whether Disney adequately, promptly, and accurately informed Plaintiff, Plaintiff's Child, and Class Members that the Private Children's Data would be disclosed to third parties without their consent as a result of its failure to properly designate its videos;

c)    Whether Disney violated the law by failing to promptly notify Plaintiff, Plaintiff's Child, and Class Members that the Private Children's Data was being disclosed without their consent as a result of its failure to properly designate its videos;

d)    Whether Disney adequately addressed and fixed the failures which permitted the unauthorized disclosure of Plaintiff's Child and Class Members' Private Children's Data; and

e)    Whether Plaintiff, Plaintiff's Child, and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Disney's disclosure of their Private Children's Data.

68.    **Typicality.** Plaintiff's Child's claims are typical of those of other Class Members because their Private Children's Data, like that of every other Class Member, was compromised as a result of Disney's incorporation and use of the Tracking Tools.

69.    **Adequacy.** Plaintiff and Plaintiff's Child will fairly and adequately represent and protect the interests of the members of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members

16

CLASS ACTION COMPLAINT

of the Class. They seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation and intends to prosecute this action vigorously.

70. **Predominance**. Disney has engaged in a common course of conduct toward Plaintiff, Plaintiff's Child, and Class Members in that the Private Children's Data was unlawfully collected in the same way. The common issues arising from Disney's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

71. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

72. Disney acted on grounds that apply generally to the Class as a whole so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

73. Likewise, particular issues under Fed. R. Civ. P. 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the

resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a) Whether Disney owed a legal duty to Plaintiff, Plaintiff's Child, and the Class to exercise due care in ensuring the proper collection, storage, and safeguarding of the Private Children's Data based on its MFK video designations;

    b) Whether Disney breached a legal duty to Plaintiff, Plaintiff's Child, and Class Members to exercise due care in collecting, storing, using, and safeguarding the Private Children's Data by failing to properly designate the videos at issue as MFK;

    c) Whether Disney adequately and accurately informed Plaintiff, Plaintiff's Child, and Class Members that the Private Children's Data would be disclosed to third parties;

    d) Whether Disney failed to implement and maintain reasonable security procedures and practices relating to the designation of its videos appropriate to the nature and scope of the information that was ultimately disclosed to third parties; and

    e) Whether Class Members are entitled to actual, consequential, and/or nominal damages and/or injunctive relief as a result of Disney's wrongful conduct.

74. Finally, all members of the proposed Class are readily ascertainable. Disney has access to Class Members' names and addresses affected by the unauthorized disclosures that have taken place.

**COUNT I**
**INVASION OF PRIVACY**
_**(On Behalf of Plaintiff and the Nationwide Class or, alternatively, the California**_
_**Subclass)**_

75. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 74 as if fully set forth herein.

76. Plaintiff, Plaintiff's Child, and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their, or their children's, Private

18

Children's Data; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to the exfiltration of their information and communications without their knowledge or consent.

77. The content on Defendants' YouTube channels was clearly and unmistakably directed to children, and Defendants were well-aware of the demographic that made up the vast majority of their audience. Yet, Defendants failed to designate this content as "made for kids," thereby enabling the platform and its ad partners to secretly track, profile, and target young viewers for behavioral advertising – a practice that is both unlawful under COPPA and highly offensive to a reasonable person.

78. Disney's actions and inactions allowing the disclosure of the substance and nature of those communications to third parties on its behalf without the knowledge and informed consent of Plaintiff, Plaintiff's Child, and Class Members is an intentional intrusion on Plaintiff's Child's and Class Members' solitude or seclusion.

79. Plaintiff, Plaintiff's Child, and Class Members had a reasonable expectation of privacy with regard to the Private Children's Data.

80. Moreover, Plaintiff, Plaintiff's Child, and Class Members have a general expectation that the communications at issue in this Complaint, including those relating to and identifying Plaintiff's Child, would be protected from surreptitious disclosure to third parties.

81. Disney's failure to properly label its children-directed content, which led to the unauthorized disclosure of Plaintiff's Child's and Class Members' Private Children's Data coupled with individually identifying information, is highly offensive to the reasonable person.

82. As a result of Disney's actions and inactions, Plaintiff's Child and Class Members have suffered harm and injury including, but not limited to, an invasion of

their privacy rights.

83.     Plaintiff's Child and Class Members have been damaged as a direct and proximate result of Disney's invasion of their privacy and are entitled to compensatory and/or nominal damages.

84.     Plaintiff, Plaintiff's Child, and Class Members seek appropriate relief for such injury including, but not limited to, damages that will reasonably compensate them for the harm to their privacy interests as a result of the intrusions upon Plaintiff's Child's and Class Members' privacy.

85.     Plaintiff, Plaintiff's Child, and Class Members are also entitled to punitive damages resulting from the malicious, willful and intentional nature of Disney's actions, directed at injuring Plaintiff, Plaintiff's Child, and Class Members in conscious disregard of their rights. Such damages are needed to deter Disney from engaging in such conduct in the future.

86.     Plaintiff also seeks such other relief as the Court may deem just and proper.

## COUNT II
## NEGLIGENCE
### (*On Behalf of Plaintiff and the Nationwide Class or, alternatively, the California Subclass*)

87.     Plaintiff repeats and realleges the allegations contained in in paragraphs 1 through 86 as if fully set forth herein.

88.     Disney had a duty of care to use reasonable means to secure and safeguard the Private Children's Data.

89.     Disney was required to comply with applicable privacy laws designed to protect children, including COPPA, and to take reasonable steps to protect children's personal information from unlawful collection and use.

90.     Disney negligently failed to take reasonable steps to protect Plaintiff's Child's and Class Members' Private Children's Data from being collected and disclosed

CLASS ACTION COMPLAINT

to third parties, without parental consent, including, *inter alia*, by failing to appropriately mark child-directed videos as MFK and, therefore, failed to prevent the collection and use of children's personal data for targeted advertising purposes.

91.    Disney's failure to act with reasonable care directly enabled the unlawful harvesting of children's personal information, exposing millions of children to commercial exploitation and violating their statutory right to privacy

92.    Disney further negligently omitted to inform Plaintiff, Plaintiff's Child, and Class Members that it would collect and use the Private Children's Data for marketing purposes, or that the Private Children's Data would be transmitted to third parties.

93.    Plaintiff, Plaintiff's Child, and Class Members are entitled to compensatory, nominal, and/or punitive damages.

### COUNT III
### UNJUST ENRICHMENT
#### (*On Behalf of Plaintiff and the Nationwide Class and, alternatively, the California Subclass*)

94.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 93 as if fully set forth herein.

95.    Plaintiff pleads this claim in the alternative to the breach of implied contract claim.

96.    Plaintiff's Child and Class Members conferred a benefit on Defendant. Specifically, they provided their Private Children's Data to Defendant

97.    Disney knew that Plaintiff's Child and Class Members conferred a benefit which Disney accepted. Disney profited from the Private Children's Data of Plaintiff's Child and Class Members through obtaining compensation for marketing and advertising services as described above.

98.    Plaintiff's Child and Class Members, on the other hand, suffered as a direct and proximate result of Disney's decision to prioritize its own profits over the privacy

CLASS ACTION COMPLAINT

of their Private Children's Data.

99.    Under the principles of equity and good conscience, Disney should not be permitted to retain such compensation.

100.    If Plaintiff, Plaintiff's Child, and Class Members knew that Disney was not properly designating its videos as MFK, they would not have agreed to provide their, or their child's, Private Children's Data to Defendants.

101.    Plaintiff, Plaintiff's Child, and Class Members have no adequate remedy at law for this count. An unjust enrichment theory provides the equitable disgorgement of profits even where an individual has not suffered a corresponding loss in the form of money damages.

102.    As a direct and proximate result of Disney's conduct, Plaintiff, Plaintiff's Child, and Class Members have suffered and will continue to suffer injury as set forth herein.

103.    Disney should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff, Plaintiff's Child, and Class Members, proceeds that they unjustly received from their improper and failed data security practices, procedures, and protocols, which led to the improper video designations and unauthorized sharing of the Private Children's Data alleged herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself, Plaintiff's Child, and other Class Members, prays for judgment against Disney as follows:

A.    an Order certifying the Nationwide Class and California Subclass, and appointing the Plaintiff and her Counsel to represent the Classes;

B.    equitable relief enjoining Disney from engaging in the wrongful conduct complained of herein pertaining to the failure to properly designate its videos as MFK and the resulting misuse and/or disclosure of the Private Children's Data of Plaintiff's Child and

Class Members;

C.      injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff, Plaintiff's Child, and Class Members;

D.      an award of all damages available at equity or law, including, but not limited to, actual, consequential, punitive, statutory and nominal damages, as allowed by law in an amount to be determined;

E.      an award of attorney fees, costs, and litigation expenses, as allowed by law;

F.      prejudgment interest on all amounts awarded and

G.      all such other and further relief as this Court may deem just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff, on behalf of Plaintiff's Child and other members of the proposed Classes, hereby demand a jury trial on all issues so triable.

Dated: September 12, 2025        Respectfully submitted,

*/s/ William J. Edelman*
William J. Edelman (SBN: 285177)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
wedelman@milberg.com

Tyler J. Bean*
Sonjay C. Singh*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: tbean@sirillp.com
E: ssingh@sirillp.com

*pro hac vice admission anticipated*

*Counsel for Plaintiffs and the Proposed Class*